# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1045 | **DATE** | 3/13/2002 |
| **CASE TITLE** | Lawrence Allen vs. Larry Massanari, Comm. Social Sec. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#12] is granted. Defendant's Motion for Summary Judgment [#15] is denied. Case is remanded to Commissioner for further consideration.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | 2 number of notices | **Document Number** |
| | No notices required. | | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 1 4 2002 date docketed | 21 |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | 3/13/2002 date mailed notice | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials FT/*slcy* | FT mailing deputy initials | |

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| LAWRENCE L. ALLEN | ) | Case No. 01 C 1045 |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| LARRY G. MASSANARI,[1] Commissioner of Social Security, | ) | |
| Defendant. | ) | |

DOCKETED

MAR 1 4 2002

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Lawrence L. Allen, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), moves this Court for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure reversing the decision of the Commissioner of Social Security ("Commissioner"), which denied his application for Disability Insurance Benefits. In the alternative, Plaintiff seeks an order remanding the case to the Commissioner for further proceedings. For the reasons set forth below, the Court grants, in part, Plaintiff's motion. Specifically, the Court remands the case to the Commissioner for further proceedings consistent with this Opinion.

---

[1]On April 3, 2001, Mr. Massanari became acting Commissioner of Social Security. Mr. Massanari is automatically substituted for William Halter as the Defendant in this action. Fed. R. Civ. P. 25(d)(1); 42 U.S.C. § 405(g)(2002).



## Procedural History

On March 13, 1997, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging that he became unable to work on January 5, 1993.[1] His application was denied initially and upon reconsideration. Plaintiff subsequently requested and received a hearing before an ALJ on August 6, 1998, at which Plaintiff, his wife, and a vocational expert ("VE") testified. (R. at 33-96.) On December 17, 1998, the ALJ denied Plaintiff benefits, finding that Plaintiff could perform a range of light work. The Appeals Council denied review. This decision stands as the final determination of the Commissioner and is the subject of the motions before the Court. (R. at 9-10)

## Factual Background

At his hearing, both Plaintiff and his wife testified on his behalf. The ALJ also received testimony from a VE, and considered numerous medical records and reports.

---

[1] Although it is not clearly set forth in the record, Plaintiff had previously filed an application for DIB. An ALJ ultimately denied his application on January 26, 1996. Plaintiff failed to pursue an appeal of this determination and the ALJ's denial stands as the Commissioner's final determination. Given the res judicata effect of this prior determination, Plaintiff concedes that DIB can be granted only subsequent to January 26, 1996.

## 1. Testimony

### Plaintiff's Testimony

At the time of the hearing, Plaintiff was 38 years old, and lived with his wife and four children. Plaintiff completed 11 ½ years of schooling and ultimately received his GED. Plaintiff joined the Navy in 1981, working as a mechanic on ground support equipment until he completed his service in 1990. After leaving the Navy, Plaintiff held a few odd jobs before taking a position as a mechanic with A & R Transport in 1991.

Approximately eighteen months after Plaintiff began working for A & R Transport, he was involved in an accident at work. On January 5, 1993, a tanker that Plaintiff was working on exploded. Plaintiff stated that he could not recall the details of the accidents; he remembered being in a haze for several days. A few days after the accident, Plaintiff visited Dr. Giger for injuries to his back, wrist, and neck. Following this accident, Plaintiff was unable to return to work. He then explained how his physical and mental constitution have progressively deteriorated since the tanker accident.

Plaintiff testified that pain in his back, wrist, neck, and joints prevents him from performing virtually all physical activity. Plaintiff explained that his pain has forced him to give up his favorite pastimes, such as fishing, softball, and

basketball, and that his social circle has dwindled down to one loyal friend, with whom he occasionally plays cards.

Plaintiff testified that he does what he can to help around the house, which is very little. While his wife is at work, Plaintiff watches their four children, but they require minimal supervision. He drives the children approximately ½ mile to and from school, and he is sometimes able to accompany his family on outings to the ice cream parlor or out for dinner.

Plaintiff does some chores around the house, but in a rather unconventional manner. For example, Plaintiff does the dishes, but his pain forces him to approach this task in stages. First, he brings the dishes to the sink, and then he rests. Next, he washes the dishes, and then he rests. By the time Plaintiff is ready to dry the dishes, almost an hour has passed. Similarly, while Plaintiff "helps" with the laundry, his assistance consists of little more than supervising the children while they do the laundry. He has attempted to do mechanical-type work around the house, but pain and his inability to concentrate prevent him from doing so.

Plaintiff testified that he has grown increasingly depressed over his inability to be more productive. He has seen two different physicians about his depression, but he cannot afford to see a psychiatrist for regular treatment. Plaintiff remembers taking Prozac at some point, presumably to treat this depression,

4

but Plaintiff does not recall if the medication helped his condition, and does not know why the medication was discontinued.

Plaintiff admitted that he spends too much time watching television. He testified that he generally naps for one hour every day, sometimes longer, and has difficulty sleeping at night. He has a hard time concentrating for longer than five minutes, when his mind begins to wander.

In addition, Plaintiff suffers from stomach problems. Plaintiff testified that, at various times, hot or cold food will cause an adverse reaction, sending a shooting, pressurized pain up through his shoulder. These incidents occur randomly, approximately three times a week, and when he suffers an attack, Plaintiff has to "stop everything". Plaintiff is currently taking medication that controls these episodes.

Plaintiff testified that his pain is different everyday. He explained that he can generally sit for an hour, but then he typically needs to lie down for relief. However, sometimes Plaintiff experiences pain and discomfort from laying down. Plaintiff can generally stand for one half hour before severe back pain settles in.

Plaintiff testified that he drove most of the two-hour drive to attend the hearing, but explained that he did so only because his wife was afraid to drive in the city. Plaintiff claims that, even though he had a pillow for support, his pain was so severe

that he had to ask his wife to take over the driving despite her fears.

Plaintiff testified that he is currently taking Prilosec and Darvocet for pain, and admitted that his wife helps him with grooming and dressing.

**Rhonda Allen's Testimony**

Plaintiff's wife also testified at the hearing, and largely corroborated Plaintiff's description of his impairments. Mrs. Allen explained that, prior to Plaintiff's 1993 accident, he was active and spry. Following the accident, however, Plaintiff's pain caused him to became more and more sedentary and withdrawn. Mrs. Allen explained that Plaintiff is unable to help significantly with caring for their four children or with the household chores. However, she admitted that he is sometimes able to drive short distances, and do some tasks, such as helping with the grocery shopping, but only for a limited amount of time. She testified that Plaintiff's condition has become a financial burden on the family, requiring Plaintiff to forego certain treatments and medications.

**The VE's Testimony**

The ALJ posed a hypothetical question to Dennis Gustafson, the vocational expert, in an effort to determine Plaintiff's RFC. The ALJ asked Mr. Gustafson whether there were significant jobs available to an individual that could not climb ladders, ropes,

scaffolds; could only occasionally climb stairs or ramps; could stoop occasionally; required the ability to alternate between sitting and standing after 30 minutes; could perform only simple one and two step tasks; and whose age, skills, and education resembled Plaintiff's. The VE opined that such an individual would be limited to light jobs, including recreation attendant, parking lot attendant, and some production inspection positions.

Upon questioning by Plaintiff's attorney, however, the VE conceded that, if that same individual's ability to concentrate was, at unpredictable times, moderately to severely impaired, it was unlikely that such a person was employable.

## 2. Medical Records

### Dr. Giger, Treating Physician

Dr. Giger began treating Plaintiff days after his accident in 1993. Given the procedural history of this case, the Court focuses only on the more recent records from Dr. Giger.

Between the January 1996 and August 1997 treatment notes, Dr. Giger noted decreased motion of the cervical, thoracic, and lumbar spine. The treatment notes chronicling this same time period reported Plaintiff's complaints of pain, including gastrointestinal reflux, which improved with Prilosec. Dr. Giger diagnosed Plaintiff with fibromyalgia and chronic pain syndrome, and gastritis, with reflux. (R. at 374-79.)

From August 1997 to July 1998, Dr. Giger noted decreased spinal motion and improved abdominal pain with Prilosec. Once again, Dr. Giger diagnosed fibromyalgia, chronic pain syndrome, and gastritis. (*Id.*)

In a letter to Plaintiff's attorney dated July 23, 1998, Dr. Giger noted that Plaintiff had been treated by numerous doctors, with minimal success. He stated that Plaintiff had experienced increased pain, despite the use of anti-inflammatory medications. Dr. Giger expected Plaintiff's condition to progressively deteriorate over time. Finally, Dr. Giger concluded that Plaintiff was totally and permanently disabled from any type of gainful employment as a result of his injuries. (R. at 410.)

**Dr. Maningo**

Dr. Maningo examined Plaintiff on May 20, 1997, at the request of the Commissioner. Dr. Maningo observed that Plaintiff had a normal gait, no difficulty performing walking or squatting exercises, no sensory or reflex abnormalities, and no atrophy. However, Dr. Maningo stated that Plaintiff's spine and extremity motion varied. Dr. Maningo found a restricted range of motion concerning Plaintiff's neck, left shoulder, low back, and both hips. Dr. Maningo referenced Plaintiff's diagnosis of chronic pain and a potential history of depression. (R. at 365-70.)

**Dr. Langgut, Examining Psychiatrist**

At the Commissioner's request, Dr. Langgut first performed a psychological evaluation of Plaintiff on August 29, 1997. He determined that Plaintiff had clear speech, with no suicidal ideations, and no signs of mania, delusions, phobias, or hallucinations. However, Dr. Langgut determined that Plaintiff was depressed, had mildly impaired judgment and impaired insight. (R. at 392-97.)

Almost one year later, Plaintiff returned to Dr. Langgut for a follow up evaluation. At the request of Plaintiff's attorney, Dr. Langgut performed a second psychological evaluation of Plaintiff on July 24, 1998. This evaluation consisted of an interview, a review of Plaintiff's medical records, a mental status examination, and behavioral observations. Dr. Langgut concluded that Plaintiff's memory was only marginally intact, and that his ability to do mental and work related activities were significantly limited. Dr. Langgut found that Plaintiff's intellectual abilities were significantly compromised, his ability to get along with others in a work environment was reduced, his daily activities were restricted, and he was reliant upon others to assist him with personal hygiene. Dr. Langgut diagnosed Plaintiff with severe depression, one episode, and a generalized anxiety disorder. (R. at 413-17.)

## Pre-1996 Medical Records

The ALJ also discussed some of the medical records that were considered in evaluating Plaintiff's prior DIB application. In May 1993, Dr. Charles Wright examined Plaintiff in connection with an insurance claim. Dr. Wright could find no structural pathology for Plaintiff's pain or stiffness, except, perhaps, a soft tissue injury of unspecified etiology. (R. at 276-78.)

In June 1993, Dr. Woloszyn performed a physical therapy evaluation at the Rockford Memorial Rehabilitation Center, which revealed a decreased range of motion of the left wrist and decreased left hand strength. Dr. Woloszyn noted that testing revealed a high subjective perception of pain that did not correspond with physical pathology. Finally, although Plaintiff refused to cooperate in Dr. Woloszyn's attempts to conduct a psychological evaluation, Dr. Woloszyn opined that Plaintiff was frustrated, but not depressed. (R. at 303-05.)

Dr. Robert Cranston, a neurologist, examined Plaintiff in January 1994, and noted that an MRI of the thoracic spine, and cervical and chest x-rays all looked normal. (R. at 309-10.) Dr. Cranston referred Plaintiff to Dr. Mohammed Shariff, a pain clinic physician. In September 1994, Dr. Shariff found that Plaintiff had upper torso pain aggravated by movement. Dr. Shariff concluded that Plaintiff had upper back pain, possibly myofascial. with depression. (R. at 311-13.) Plaintiff agreed

to participate in physical therapy from October 1994 to February 1995, and reported some improvement. Dr. Om Sureka noted that Plaintiff still complained of pain, and therapy was started again in March 1995 and continued through approximately August 1995. Plaintiff did not complete this program. (R. at 334-340.)

In June 1995, Dr. Giger referred Plaintiff to Dr. Drew Georgeson after an x-ray revealed shrapnel fragments in Plaintiff's abdominal wall. These doctors speculated that the shrapnel fragments must have been the result of the exploding tanker. Plaintiff underwent surgery to remove the fragments in July 1995, with no apparent complications. (R. at 363.)

### 3. The ALJ's Opinion

The ALJ determined that Plaintiff had strain of the cervical, thoracic, and lumbar spine, and depression, but that he had no impairment or combination of impairments that met or equaled the criteria of the Listing of Impairments. The ALJ discounted Plaintiff's complaints of pain as largely incredible. He noted that Plaintiff makes breakfast and lunch for his children, drives and watches television, and occasionally reads.

With regard to Plaintiff's mental impairment, the ALJ acknowledged that Plaintiff has problems with depression, but added that Plaintiff's failure to seek regular treatment for depression indicates that the problem is not severe. The ALJ noted that Dr. Langgut indicated significant limitations in a

11

variety of areas, including concentration. However, the ALJ found that Dr. Langgut's conclusions were based upon Plaintiff's subjective complaints of pain. Moreover, the ALJ found that Plaintiff's home life and social functioning were fairly normal, and that Plaintiff had not experienced deterioration in work or a work-like setting due to his mental impairment. Therefore, the ALJ felt that merely restricting Plaintiff to simple one and two step tasks was adequate to account for whatever mental limitations Plaintiff might have.

The ALJ concluded that Plaintiff was unable to perform his past relevant work, but retained the residual functional capacity ("RFC") to perform light work that did not require climbing ladders, ropes, or scaffolds, required only occasional climbing of stairs or ramps, and allowed for a sit/stand option after 30 minutes, and was limited to simple one and two step tasks. (R. at 18-31.)

## Standard of Review

In reviewing the ALJ's decision, the Court may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v.*

*Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). This does not mean that the ALJ is entitled to unlimited judicial deference, however. The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d at 333. Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for that of the medical professionals. *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996) (quoting *Kuwahara v. Bowen*, 677 F. Supp. 553, 561 (N.D. Ill. 1988)). An ALJ may not "play doctor;" he can substitute his own judgment for a physician's opinion only if he relies "on other medical evidence or authority in the record." *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).

*Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which he finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). This does not mean that the ALJ is entitled to unlimited judicial deference, however. The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d at 333. Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for that of the medical professionals. *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996) (quoting *Kuwahara v. Bowen*, 677 F. Supp. 553, 561 (N.D. Ill. 1988)). An ALJ may not "play doctor;" he can substitute his own judgment for a physician's opinion only if he relies "on other medical evidence or authority in the record." *Clifford v. Apfel,* 227 F.3d 863, 870 (7th Cir. 2000).

In order for this Court to determine whether the ALJ's decision is based upon substantial evidence, the ALJ must articulate his analysis at some minimal level. *See Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review). The ALJ must build "an accurate and logical bridge" from the evidence to his conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Finally, although Plaintiff bears the burden of demonstrating his disability, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (*quoting Smith v. Sec'y of HEW*, 587 F.2d 857, 860 (7th Cir. 1978)). "Failure to fulfill this obligation is 'good cause' to remand for gathering additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000) (finding that, if the ALJ found the evidence before him insufficient, he should have obtained more evidence.)

### Social Security Regulations

The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520 and 416.920 (2001). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments;

14

(3) whether the claimant's impairment meets or equals any
impairment listed in the regulations as being so severe as to
preclude gainful activity; (4) whether the claimant is unable to
perform his past relevant work; and (5) whether the claimant is
unable to perform any other work existing in significant numbers
in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920;
*see also Young*, 957 F.2d at 389. A finding of disability
requires an affirmative answer at either step 3 or step 5. A
negative answer at any step (other than step 3) precludes a
finding of disability. *Id.* The claimant bears the burden of
proof at steps 1-4, but the burden shifts to the Commissioner at
step 5. *Id.*

The ALJ's analysis at step 5 typically involves an
evaluation of the claimant's RFC to perform a particular category
of work (i.e. sedentary, light, medium, heavy, or very heavy
work), in combination with an application of the Medical-
Vocational Guidelines ("the Grid") to determine whether an
individual of the claimant's age, education, and work experience
could engage in substantial gainful activity. *See* 20 C.F.R. Part
404, Subpart P, Appendix 2. The Grid is a chart that classifies
a claimant as disabled or not disabled, based on the claimant's
physical capacity, age, education, and work experience. *Walker
v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the use of the
Grid is appropriate, the Commissioner or ALJ may rely upon it for

determining disability, and, in such a case, the Grid alone constitutes substantial evidence sufficient to uphold the decision of the Commissioner. *Id.*

However, where a plaintiff suffers from significant non-exertional impairments, the ALJ may not rely upon the Grid. *See* SSR 83-14. "When a plaintiff's non-exertional impairments significantly diminish his ability to work . . . the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which plaintiff can obtain and perform." *Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir. 1986).

## Discussion

Plaintiff attacks the ALJ's determination on several grounds, each of which, Plaintiff contends, warrants reversal or remand. Plaintiff advances three primary arguments challenging the propriety of the ALJ's determination, asserting that the ALJ: 1) improperly disregarded psychiatric testimony supporting Plaintiff's claim of disability; 2) failed to discuss Mrs. Allen's testimony, which supported her husband's claim; and 3) did not consider Plaintiff's fibromyalgia in assessing Plaintiff's credibility. The Court addresses each argument in turn.[2]

---

[2] Because the Court concludes that remand is warranted, the Court need not determine whether a sixth sentence remand is appropriate. *See* 42 U.S.C. § 405(g) (the court may remand a case

16

## 1. The ALJ Improperly Discounted Dr. Langgut's Evaluation

In determining that Plaintiff retained the RFC to perform light work, limited to simple one and two instruction tasks, the ALJ parted company with Dr. Langgut, who opined that Plaintiff had "significant difficulties and an apparent decrease in his ability to concentrate and put forth a sustained level of concentration." (R. at 420, Dr. Langgut's 8-4-98 Mental Medical Assessment). Dr. Langgut further concluded that Plaintiff was substantially restricted in a number of areas critical to an RFC assessment, including reasoning, making occupational adjustments, making personal adjustments, making social adjustments, and in his daily activities.

In arriving at his decision, the ALJ determined that: 1) Plaintiff's lack of treatment indicated that Plaintiff's depression was not as severe as alleged; 2) while Dr. Langgut found that Plaintiff's ability to concentrate was significantly limited, Plaintiff's description of his everyday activities indicated that he could perform work involving simple one and two step tasks; and 3) Dr. Langgut's conclusions were based on

---

if new and material evidence becomes available, and the claimant demonstrates good causes for failing to produce it at his hearing. ) However, the Court notes that Plaintiff has not demonstrated good cause for not submitting, or taking, Dr. Giger's deposition in a timely manner.

Plaintiff's subjective complaints of pain, which the ALJ found to be exaggerated.

The Court finds that the ALJ's reasons for discounting Dr. Langgut's diagnosis are not based on substantial evidence. First, the ALJ failed to discuss Plaintiff's evidence that tended to show that Plaintiff did not pursue mental treatment because he could not afford such treatment. *See Godbev v. Apfel,* 238 F.3d 803, 808-09 (7th Cir. 2000). Plaintiff expressly stated that he did not seek psychiatric treatment because he was not in a position to pay for it. This testimony is corroborated by both Plaintiff's and Mrs. Allen's testimony that Plaintiff's illness had placed a severe financial strain on the family's resources. The testimony indicated that Plaintiff had discontinued certain medications because he could not afford them, Plaintiff was on a State "spend down" to pay outstanding medical bills, and Mrs. Allen's income as a nurse's aid was the family's sole source of support. Given this testimony, it is not clear that the ALJ considered all of the evidence in determining that the reason that Plaintiff did not pursue mental health treatment was because this condition was not significant. *Id.* at 809 (the requirement that the ALJ's decision be supported by substantial evidence requires the ALJ to discuss evidence that may explain why a claimant did not pursue medical treatment.)

Also troubling is the fact that the ALJ substituted his own judgment regarding how Plaintiff's daily activities impacted his limitations for Dr. Langgut's professional, medical opinion. *Mussman v. Apfel*, 17 F. Supp.2d 885, 891 (N.D. Ill. 1998) (the ALJ cannot discount a psychologist's medical judgment based upon her own observations of the claimant during the hearing). For example, the ALJ found that, because Plaintiff participates in activities such as driving, Dr. Langgut's assessment of Plaintiff's concentration limitations were overstated. Similarly, the ALJ acknowledged Dr. Langgut's opinion that Plaintiff's social functioning was limited, but found that Plaintiff's infrequent visits with one friend undermined the weight of this assessment. [3]

Although the ALJ is not required to accept Dr. Langgut's medical opinion, the ALJ's own assessment of Plaintiff's mental condition is not an adequate substitute for Dr. Langgut's judgment in this case. *See generally, Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("Without expressly relying on any medical evidence or authority, the ALJ determined that Mr. Rohan's efforts at engaging in a small . . . business were

---

[3] The Court further notes that in some instances, the ALJ overstates Plaintiff's testimony with regard to his daily activities, and the ALJ altogether overlooked Plaintiff's testimony regarding his failed attempt at mechanical tasks around the home in assessing Plaintiff's deterioration or decompensation in work and work-like settings.

incompatible with a diagnosis of major depression and Dr. Shapiro's conclusions regarding Rohan's functional abilities.") If the ALJ had questions regarding Dr. Langgut's conclusions, he should have called upon a medical advisor for medical advice.

## 2. **The Failure to Discuss Mrs. Allen's Testimony Was Not Error**

Next, Plaintiff argues that the ALJ had an obligation to address his wife's testimony in his opinion. Plaintiff contends that this oversight is particularly troubling because Mrs. Allen corroborated Plaintiff's complaints of pain – complaints that the ALJ dismissed as largely incredible.

The Seventh Circuit has rejected nearly the identical argument on at least two occasions. In *Carlson v. Shalala*, the court concluded that an ALJ need not discuss the claimant's wife's testimony, because the wife's description of the claimant's limitations "was essentially redundant." 999 F.2d 180, 181 (7th Cir. 1993) (noting that, while the ALJ may not ignore an entire line of evidence, corroborative accounts need not be expressly analyzed.)

Similarly, in *Books v. Chater*, the claimant argued that, because the ALJ found the claimant's description of his pain to be incredible, the ALJ erred by failing to address the claimant's brother's corroborative testimony. 91 F.3d 972, 980 (7th Cir. 1996). The Court disagreed, finding that the claimant's

brother's corroborative testimony did not constitute a separate
line of evidence that required additional analysis:

> To the extent [the ALJ] found Book's testimony . . .
> untenable when contrasted with his reported daily activities
> and the relevant medical evidence, he necessarily found
> Roland Book's supporting testimony similarly not credible.

*Id.*

In the instant case, Mrs. Allen's testimony did not
constitute a separate line of evidence that would obligate the
ALJ to articulate his reasons for rejecting it.  Rather, Mrs.
Allen's testimony merely corroborated Plaintiff's description of
his pain and limitations.  Therefore, the ALJ did not err by
declining to expressly analyze Mrs. Allen's testimony.

**3.  The ALJ Failed to Consider Fibromyalgia In Assessing The
Credibility of Plaintiff's Complaints of Pain**

Plaintiff also takes issue with the ALJ's credibility
determination with regard to Plaintiff's complaints of pain.
Plaintiff argues that the ALJ improperly ignored Dr. Giger's
repeated diagnosis of fibromyalgia in assessing Plaintiff's
credibility and RFC.

It is axiomatic that an ALJ may not disregard an entire line
of evidence, but it is equally well-settled that the ALJ need not
evaluate in writing every piece of evidence submitted.  *Books v.
Chater,* 91 F.3d 972, 980 (7th Cir. 1996).  Rather, the ALJ need
only discuss important evidence "that is credible, supported by

clinical findings, and relevant to the question at hand." *Nelson v. Apfel,* 131 F.3d 1228, 1237 (7th Cir. 1997).

In this case, the Court finds that the evidence of fibromyalgia was important, and the ALJ erred in not discussing the impact of Plaintiff's fibromyalgia on Plaintiff's credibility and his RFC. First, the Court notes that Plaintiff presented credible evidence of fibromyalgia. Fibromyalgia is a mysterious disease; doctors know very little about what causes it or how to treat it. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). There are no objective medical tests that can confirm the existence of fibromyalgia. Rather, the principal symptoms, which include persistent pain, fatigue, disrupted sleep, stiffness, and numerous tender spots on the body, are all subjective. *Id.* at 306-307 (noting that fibromyalgia can be, but is not usually, disabling.)

Plaintiff's complaints regarding sleep disturbances, fatigue, pain, stiffness, and tenderness all support Dr. Giger's diagnosis of fibromyalgia. In addition, Mrs. Allen's description of her husband's persistent and worsening pain, despite medication, as well as Dr. Maningo's assessment of chronic pain syndrome, are consistent with Dr. Giger's diagnosis of fibromyalgia. Therefore, the Court finds that the evidence concerning fibromyalgia is significant and warranted discussion.

Notably, the Commissioner does not challenge the veracity of Dr. Giger's diagnosis, but merely argues that there is no evidence that Plaintiff's fibromyalgia was disabling or limiting. Therefore, the Commissioner argues, the ALJ was not obligated to discuss this evidence. To a certain extent, the Commissioner misses the point; the ALJ erred because he did not attempt to reconcile Plaintiff's fibromyalgia with his conclusion that Plaintiff's complaints of pain were exaggerated. In assessing Plaintiff's credibility and determining Plaintiff's RFC, the ALJ dismissed many of Plaintiff's self-described pain limitations, at least in part, because they were not supported by objective medical data. The ALJ failed to explain why Plaintiff's fibromyalgia did not support his complaints of pain, particularly where Dr. Giger opined that Plaintiff's condition rendered him totally and permanently disabled.

As Plaintiff correctly points out, the ALJ based his assessment of Plaintiff's credibility, in large part, on the absence of objective medical data to support Plaintiff's complaints of pain. Although the ALJ, not the Court, is charged with evaluating a claimant's credibility, the failure to discuss evidence that contradicts that credibility determination requires that this matter be remanded to the Commissioner for a determination consistent with this opinion. *Carson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (an ALJ must

"sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence. . . and to trace the path of the ALJ's reasoning.")

**CONCLUSION**

Having carefully reviewed the entire record, the Court finds that the ALJ's rejection of Dr. Langgut's psychiatric opinion and his failure to address Plaintiff's fibromyalgia require the Court to remand this case to the Commissioner for further consideration consistent with this Opinion.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment be, and the same hereby is, GRANTED.  It is further ordered that the Commissioner's Motion for Summary Judgment be, and the same hereby is, DENIED.

DATED: March 13, 2002      E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge